IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

- - - - - - - - - - - - - - -
                              )
United States of America,     )
                              )
              Plaintiff,      )
                              )
        vs.                   )    **FILE NO. 1:16-cr-184**
                              )
William Anthony Fly,          )
                              )
              Defendant.      )
                              )
- - - - - - - - - - - - - - -



**T R A N S C R I P T**

**O F**

**P R O C E E D I N G S**

**CHANGE OF PLEA - JANUARY 5, 2018**

**Pages 1-32**



HELD AT: QUENTIN BURDICK UNITED STATES COURTHOUSE
         655 FIRST AVENUE NORTH
         FARGO, NORTH DAKOTA  58102

BEFORE:  THE HONORABLE DANIEL L. HOVLAND

COURT REPORTER:  KELLY A. KROKE

**A P P E A R A N C E S**

**MR. MATTHEW GREENLEY**            **COUNSEL FOR PLAINTIFF;**
Office of US Attorney
655 1st Avenue North, Ste. 250
Fargo, ND 58102


**MR. CHRISTOPHER BELLMORE**        **COUNSEL FOR DEFENDANT;**
Office of Federal Public Defender
324 North 3rd Street, Ste. 1
Bismarck, ND  58501

**P R O C E E D I N G S**

1          (January 5, 2018:  The following proceedings
2  commenced at 8:15 a.m.:)
3          THE COURT:  Good morning.  We'll open the
4  record in the case of United States of America versus
5  William Fly.  On behalf of the federal government's AUSA
6  Matt Greenley.
7          MR. GREENLEY:  Good morning.
8          THE COURT:  Representing the defendant looks
9  to be Chris Bellmore from the Federal Public Defender's
10  Office in Bismarck.
11          Mr. Fly, how are you today?
12          THE DEFENDANT:  Okay, I guess.
13          THE COURT:  All right.  This is scheduled
14  for a change of plea hearing.  The charge is
15  transportation with intent to engage in criminal sexual
16  activity.  The parties filed a written Plea Agreement on
17  January 3rd of this year along with a Plea Agreement
18  Supplement.
19          Mr. Greenley, maybe you could outline how we
20  got where we are today.
21          MR. GREENLEY:  Yes, Your Honor.  As the
22  Court very well knows, this case has been pending for a
23  long time.  The current charge in the Superseding
24  Indictment is the same charge that's in the Information.

1    The only difference is that the Information only alleges

2    the criminal offense of incest with the factual basis

3    that we'd anticipate Mr. Fly would admit to.  He won't

4    admit to the forcible act as part of the Plea Agreement.

5    Otherwise the agreement is fairly straight-forward.

6            The United States concedes that it will

7    recommend a sentence within the guideline range as

8    determined by the Court.  The United States has agreed

9    not to recommend a lifetime supervision but only 10

10   years of supervision and other than that the parties

11   have no further agreement as far as sentencing.  Mr. Fly

12   is free to argue for a -- whatever sentence he wants.

13           THE COURT:  And I noticed in the Plea

14   Agreement the parties have at least agreed on a

15   particular Sentencing Guideline provision and everybody

16   understands that it's going to be up to the United

17   States Probation Office to determine what the

18   appropriate Sentencing Guideline is.

19           MR. GREENLEY:  I believe so, Your Honor.  We

20   anticipate a contested sentencing hearing.  I would note

21   for the Court's benefit too that if Mr. Fly enters his

22   plea today the United States will move for the extra

23   third point.  I know that this is very late in the

24   proceedings, but we will save expenses for expert

25   witnesses and travel bringing in a jury and so forth.

1           THE COURT:  Mr. Bellmore, anything you wish

2   to add to that summary?

3           MR. BELLMORE:  No, Your Honor.  That's my

4   understanding of the Plea Agreement.

5           THE COURT:  Very well.  Mr. Fly, I am

6   required to visit with you on the record here about your

7   intention to plead guilty to this charge.  Most of what

8   I need to visit with you about are matters that have

9   already been addressed in the Plea Agreement.  The law

10  requires we have a hearing in open court, and I need to

11  satisfy myself that you understand the charge that's

12  brought against you and what the maximum penalties are

13  and that you understand the terms of the Plea Agreement.

14  If you have any questions, you're free to interrupt me

15  and ask questions throughout the hearing.  If you've got

16  questions about the Plea Agreement, this is your

17  opportunity to raise those.

18           But do you have a copy of the Plea Agreement

19  there in front of you?

20           MR. BELLMORE:  Yes, Your Honor.  I do have a

21  copy of the Plea Agreement.  Just so the Court's aware,

22  it appears as though this is one of the copies without a

23  signature but Mr. Fly did -- I did witness his signing

24  of the Plea Agreement.

25           THE COURT:  Okay.  So, Mr. Fly, just to

start out here, could you tell me how old you are today.

THE DEFENDANT:  Forty-nine.

THE COURT:  All right.  And are you in relatively good health today?

THE DEFENDANT:  I have quite a few different ailments.

THE COURT:  I've read your letter carefully that you wrote to me the other day, but in terms of your overall mental health is your mind clear today?

THE DEFENDANT:  (No response.)

THE COURT:  I mean, do you understand why we're here today?

THE DEFENDANT:  I understand why we're here.

THE COURT:  All right.

THE DEFENDANT:  I have a good deal of anxiety.

THE COURT:  Sure.  Well, that's understandable.

THE DEFENDANT:  You know, because of the circumstances of the jail and being tortured over there, I've -- you know, I've had some hesitancy about this in all honesty with you and everything.  But, you know, it just seems impossible to go for it against Goliath, you know.

THE COURT:  All right.  And do you feel

1  you've had enough time to visit with Mr. Bellmore about

2  the case and about the Plea Agreement?

3           THE DEFENDANT:  I think it's been more than

4  spontaneous but -- I don't know.

5           THE COURT:  Well, you've certainly met with

6  him before you signed the Plea Agreement, correct?

7           THE DEFENDANT:  I met with him on the night

8  that we signed the Plea Agreement.

9           THE COURT:  And did you read the Plea

10 Agreement before you signed it?

11          THE DEFENDANT:  We went over it, yes, Your

12 Honor.

13          THE COURT:  All right.  And did he give you

14 an opportunity to ask questions about what it all meant

15 for you?

16          THE DEFENDANT:  We went over it, yeah, in

17 that respect.

18          THE COURT:  All right.  And do you have any

19 criminal convictions in your past or do the parties

20 anticipate he's going to fall within Criminal History

21 Category I?

22          MR. BELLMORE:  I think it's II, Your Honor.

23 I think there's a qualifying felony conviction so he'd

24 have three scorable points based on a conviction out of

25 Arizona.

1              THE COURT:  And what was that conviction?

2              MR. BELLMORE:  I believe it was a theft

3    case.

4              THE COURT:  How many years ago?

5              THE DEFENDANT:  2000 -- 1998 is when it

6    occurred.

7              MR. BELLMORE:  It tolled because of the

8    probation revocation.  I think it's eight if memory

9    serves.

10             THE COURT:  And did you serve any time on

11   that conviction?

12             THE DEFENDANT:  Probation and then a

13   suspended sentence.

14             THE COURT:  Was that a felony?

15             THE DEFENDANT:  It was designated and it was

16   supposed to be turned to a misdemeanor.

17             THE COURT:  Okay.  So let's run through the

18   Plea Agreement.  Do you have a copy there in front of

19   you?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  On page 10 of the Plea

22   Agreement, there's signatures of both attorneys and

23   yourself.  Do you recall signing the Plea Agreement on

24   January 2nd of this year?

25             THE DEFENDANT:  Yeah.  This isn't the copy

1   that I signed but I did sign a copy of this.

2              THE COURT:  All right.  But if you could

3   turn to paragraph 7, which summarizes what the maximum

4   penalties are for this offense, this crime that's set

5   forth in the Information, which is the document that's

6   the charging document in this case, it's a felony.  It

7   carries a maximum of 10 years in federal prison, a

8   maximum fine of $250,000.  You can be placed on what's

9   known as supervised release for a minimum of five years

10  all the way up to life, and as a part of the sentence

11  you're required to pay what's called a special

12  assessment of $100.  Those are the maximum penalties

13  under federal law for this crime.  Do you understand

14  that, sir?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Paragraph 8 of the Plea

17  Agreement outlines what your rights are as a defendant.

18  Everyone charged with a crime in Federal Court has the

19  right to a jury trial.  That means that nobody has to

20  plead guilty; that if you wish to proceed to a jury

21  trial and have a jury of 12 persons hear the evidence in

22  this case and decide whether you are guilty or not

23  guilty, you certainly have a right to do that.

24             When cases proceed to trial as the defendant

25  you are presumed innocent and the government always has

1    the burden of proof at trial.  The government has the

2    responsibility of calling witnesses and presenting

3    evidence to prove up the charges.  You'd be represented

4    by an attorney at trial and your attorney has an

5    opportunity to cross-examine government's witnesses and

6    challenge their credibility.

7              As a defendant you also have a right to put

8    on a case.  You can have witnesses brought in to testify

9    on your behalf.  You also have a right to testify at a

10   criminal trial if you wished but you also have a right

11   to remain silent.  That means that nobody could ever put

12   you on the stand during a trial and question you what's

13   gone on here unless you permitted that to occur.

14             Do you understand all of that?

15             THE DEFENDANT:  I do, Your Honor.  But I

16   feel also that I would be greatly discriminated by a

17   jury and that's one of the things that's putting me

18   where I'm at at this point because, you know, I was born

19   intersex, which otherwise is known as hermaphrodite, and

20   I identify as female.  And this, you know, would greatly

21   discriminate me in the North Dakota region and there's

22   plenty of recent media about that.  People that are --

23             THE COURT:  Members of the jury don't know

24   that about you and they wouldn't know that about you at

25   trial unless you would be the person that chose to

1  reveal that to them.  But you understand you have a

2  right to a jury trial?

3              THE DEFENDANT:  I do understand, Your Honor.

4              THE COURT:  And in addition to that you

5  have -- if this case proceeded to a trial and you were

6  found guilty by a jury, you have certain rights of

7  appeal.  They include your right to appeal the jury's

8  decision as well as a right to appeal the sentence that

9  you would be ordered to serve.

10             Now you also have a right to plead guilty.

11 In the federal criminal justice system year after year

12 somewhere in the range of 75- to 80,000 people are

13 sentenced each year in Federal Court and they keep very

14 detailed statistics about those sentencings.  And the

15 statistics, which I follow very closely, have generally

16 revealed that about 97 percent of criminal cases are

17 resolved by defendants signing a Plea Agreement and

18 pleading guilty.  At least last year it was 97 percent.

19 Generally it's between 95 and 97 percent year after

20 year.

21             But what you need to understand is that when

22 you sign a Plea Agreement and you plead guilty you do

23 give up some important rights and they include giving up

24 your right to a jury trial as well as giving up your

25 rights of appeal that I'll talk to you about in just a

```
 1   few moments.  But do you understand that you're giving
 2   that up by signing a Plea Agreement and pleading guilty?
 3               THE DEFENDANT:  Yes, Your Honor.
 4               THE COURT:  And you've made the decision
 5   that you intend to plead guilty this morning; is that
 6   correct?
 7               THE DEFENDANT:  Yes, Your Honor.
 8               THE COURT:  And has anyone -- throughout
 9   this process do you feel that you've been intimidated or
10   threatened or coerced in some way to come in here this
11   morning to plead guilty or is it a decision that you
12   have made on your own with the help of your attorney?
13               THE DEFENDANT:  Well, it's a decision I made
14   with my attorney.
15               THE COURT:  All right.  Did I interrupt you?
16   Is there something more you wanted to say?
17               THE DEFENDANT:  No.
18               THE COURT:  Okay.  And if you could turn to
19   paragraph 13.  It's a paragraph that starts the
20   discussion about Sentencing Guidelines and in the
21   federal criminal justice system for the last 30 years we
22   have had a comprehensive set of what are known as the
23   Sentencing Guidelines.  This manual that I'm holding up
24   here (indicating), do you see that?
25               THE DEFENDANT:  Yes, Your Honor.
```

 1          THE COURT:  It's a Sentencing Guideline

 2   Manual.  It's been around for a long time now.  And it's

 3   crystal clear under the law before any defendant is

 4   sentenced in Federal Court in a criminal case the judge,

 5   the sentencing judge, namely myself, is required to

 6   determine what the appropriate Sentencing Guidelines are

 7   and what the Sentencing Guideline range is.

 8          So we have to consult with this manual and

 9   we look at two primary factors.  One is your criminal

10   history and the other is we look at the crime that you

11   plead guilty to.  With respect to criminal histories, in

12   the Sentencing Guideline Manual there are six criminal

13   history categories that people can fall into, and VI is

14   the most serious of the criminal histories categories

15   and it's all based on your prior convictions.  And as we

16   sit here today we're not exactly certain whether you

17   will fall in Criminal History Category I or II.  The

18   attorneys seem to think it will probably be Criminal

19   History Category II but it could be different than that.

20   Usually the attorneys who have had a chance to look at

21   your prior convictions can gauge what criminal history

22   category you're in but once in a while there's other

23   things that may turn up.

24          But before we ever have the sentencing

25   hearing you and your attorney will have an opportunity

1    to read through a report that will be prepared called a

2    Presentence Investigation Report.  That report will list

3    all of your prior convictions and arrests, and the

4    United States Probation Office prepares that report.

5    They go through your prior convictions and then they

6    assign points to them based on the age of the conviction

7    and the length of the sentence and things of that sort.

8    They'll assign anywhere from zero to three points to

9    convictions and then they add up those points and then

10    it tells us what criminal history category that you're

11    in.

12         But you and Mr. Bellmore will have a chance

13    to go through that, and if Mr. Bellmore thinks that the

14    United States Probation Office didn't properly calculate

15    your criminal history, he has a chance to challenge that

16    before we ever get to a sentencing hearing.  But usually

17    by the time we get to the sentencing hearing it's

18    crystal clear whether somebody's in Criminal History

19    Category I or II or whatever it might be.  If it's still

20    unclear then I have to make the final decision about

21    what criminal history category that somebody's in, but

22    generally in any given year I have to do that maybe one

23    or two times at the most because your criminal history

24    is fairly black and white.  You understand that?

25              THE DEFENDANT:  Yes, Your Honor.

1           THE COURT:  So we'll just function today

2    with the assumption that you're in Criminal History

3    Category II.  And the other factor that we look at is

4    the crime that you plead guilty to, and in the federal

5    system there are thousands of crimes and every one of

6    them has a certain number value associated with it.

7    They call it the base offense level for that crime.  And

8    I'm not sure the parties have agreed on that in this

9    case.

10          MR. GREENLEY:  No, Your Honor.  We've left

11   it open to argument.

12          THE COURT:  Okay.  And do we have a range

13   that the parties are going to argue about in terms of a

14   base offense level with adjustments or is that still

15   wide open?

16          MR. GREENLEY:  Your Honor, I think because

17   the cross-reference under that guideline changes it

18   significantly, the parties haven't agreed to any

19   particular range.

20          THE COURT:  All right.  There's several

21   different possibilities of what Sentencing Guideline

22   provision will apply and what the number value is

23   associated with this crime that you're pleading guilty.

24   Where it stands in the Plea Agreement is that that's

25   left open for argument.  So both sides can argue as

1    aggressively as they want as to what they believe is an

2    appropriate Sentencing Guideline range and what

3    adjustments, if any, apply to that.  And then paragraph

4    13 and 14 --

5              THE DEFENDANT:  Your Honor?

6              THE COURT:  Yes.

7              THE DEFENDANT:  Sorry to bother you on this,

8    but would it just help if I went to trial on this to

9    determine that better or no?

10             THE COURT:  Well, the trial doesn't

11   determine the Sentencing Guideline range.  It's the

12   crime that you're convicted of.  Whether you plead

13   guilty to it or you're found guilty at a trial by a

14   jury, ultimately it's going to be left up to the United

15   States Probation Office to go through the Sentencing

16   Guideline Manual and determine what Sentencing Guideline

17   provisions apply.  And then it's left up to the

18   attorneys to argue whether they believe those

19   calculations are accurate or not.

20             THE DEFENDANT:  Well, kind of what I'm

21   saying, Your Honor, is would it shed more light on it

22   to --

23             THE COURT:  No, I don't think it would shed

24   more light on the situation.  Sitting here today, I

25   mean, I ultimately am going to be the one that has to

1    decide what the appropriate Sentencing Guidelines are

2    whether there's a trial or not.  The statutory maximum

3    is 10 years in this case so we know that's the cap, but

4    there could be a wide range of sentences below that.

5    And both attorneys have preserved the right to make

6    arguments as to what they believe is an appropriate

7    Sentencing Guideline and what they believe is an

8    appropriate sentence.

9            Now in addition to the Sentencing

10   Guidelines, there's a number of other sentencing factors

11   that every judge is required to consider before we

12   sentence people whether there's a trial or not.  Those

13   sentencing factors are all outlined in a federal law.

14   The law is called -- the citation to it is 18, United

15   States Code, Section 3553 subpart (a).  And Mr. Bellmore

16   can make you a copy of that statute if you would like to

17   see it, and that statute lists nine or 10 other factors

18   that I'm required to consider; such things as your

19   history and background and the nature and circumstances

20   of this offense and how to best structure a sentence

21   that will protect the public and deter further

22   misconduct and afford you opportunities for

23   rehabilitation in sentencing.  And I can't outline all

24   nine or 10 of those for you but every judge in this

25   country is required to look at those.

1     So we have the Sentencing Guidelines and

2 then we have these 3553(a) sentencing factors that I

3 mentioned.  That has to be done in every case whether

4 they go to trial or not.  And both attorneys have the

5 right at a sentencing hearing to argue to me what they

6 believe is an appropriate, reasonable sentence, how

7 they -- what they believe are the appropriate Sentencing

8 Guidelines, what they believe are the important

9 sentencing factors, these 3553(a) factors that I should

10 take into consideration.

11     And you are also given an opportunity at a

12 sentencing hearing to tell me what you believe is an

13 appropriate sentence.  Nobody's prohibited from speaking

14 up and telling me what they believe should be the

15 appropriate outcome in this case.  Understood?

16     THE DEFENDANT:  Yes, Your Honor.

17     THE COURT:  Okay.

18     THE DEFENDANT:  Thank you.

19     THE COURT:  Do you have any questions about

20 Sentencing Guidelines or anything of that sort?

21     THE DEFENDANT:  You seemed to cover it.

22 Thank you.

23     THE COURT:  All right.  At the sentencing

24 hearing both sides can also call witnesses that might

25 support their argument, and you are entitled to call

1  witnesses, character witnesses, as well as submit

2  letters from people that know you well and can speak of

3  your character, and all of that are matters that I'm

4  required to consider.  But we're looking at anywhere

5  from zero to 10 years in this case for a sentence.

6          Do you understand that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And, I don't know, oftentimes

9  when cases go to trial then there's a wider range of

10 possible sentences because you've also -- you don't get

11 any credit for accepting responsibility in signing a

12 Plea Agreement and avoiding all the time and expense

13 associated with a trial as well as the heartaches that

14 flow to everybody.

15          So let's move on in the Plea Agreement.  If

16 you could turn to paragraph 22, that starts near the

17 bottom of page 7.  Do you see that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  And paragraph 22 is entitled

20 "Defendant's Waiver of Appeal" and the words "waiver of

21 appeal" simply mean giving up your right of appeal.

22 These are important paragraphs in Plea Agreements.  I

23 have seen thousands of Plea Agreements over the years

24 and I can tell you that not only in North Dakota but

25 elsewhere throughout the country in Federal Court most

1    Plea Agreements contain a paragraph similar to this

2    where defendants have agreed to give up their right of

3    appeal after they've been sentenced.

4              These paragraphs are intended to put an end

5    to these cases after you as a defendant have been

6    sentenced.  We're trying to eliminate or at least

7    minimize the possibility of any defendant coming back

8    and trying to reopen these cases after we've had a

9    sentencing hearing.  And the Courts of Appeals

10   throughout the country have all said to defendants that

11   Plea Agreements are considered to be contracts, and if

12   you sign a Plea Agreement you have entered into a

13   contract with the federal government and if you have

14   agreed that you will not appeal in that Plea Agreement

15   you're going to be held to that contract term like any

16   other contract that a person might sign in life.

17             When you wade through the entirety of

18   paragraph 22, it's somewhat confusing because it

19   contains a lot of fancy lawyer-like language but here's

20   basically what it means.  When you cut through all the

21   legal jargon, it simply means that before I sentence you

22   I'm required to determine what the appropriate

23   Sentencing Guideline range is by going through this

24   manual.  Ultimately I have the final say about what are

25   the appropriate Sentencing Guidelines.  This paragraph

1   goes on to say that as long as I sentence you anywhere

2   within that range that's determined by the Sentencing

3   Guidelines that you have agreed that you will not appeal

4   or challenge that.  You have in essence agreed that you

5   will live with the sentence that I order you to serve in

6   this case after giving careful consideration to the

7   Sentencing Guidelines and these other sentencing factors

8   that I mentioned.

9             Do you understand that?

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  Once in a while when defendants

12  get sentenced in Federal Court they go off to federal

13  prison.  They start rubbing shoulders with other inmates

14  who consider themselves to be legal experts and they get

15  convinced that they got a bad deal and they want to try

16  to back out of their Plea Agreement.  So they start

17  filing motions to withdraw from their Plea Agreement.

18  They start filing motions to try to reopen the case.

19  But generally defendants after they've been sentenced in

20  accordance with the Plea Agreement and if they have

21  agreed that they will not appeal from those appeals,

22  those efforts to try to reopen cases are rarely

23  successful.  I've been here 16 years.  I've never had a

24  defendant that's successfully tried to challenge one of

25  my sentences when I've sentenced them in accordance with

a Plea Agreement like this.  The Courts of Appeals to
those defendants generally say:  Mr. Defendant, you've
signed a Plea Agreement.  You've signed a contract.
You've told us that you're not going to appeal.  We're
not going to listen to your appeal.  Case dismissed is
basically what the decisions say on appeal.  So it's an
important paragraph.

                    You understand that?

                    THE DEFENDANT:  Yes, Your Honor.

                    THE COURT:  Do you have any questions about
what it means to give up your right of appeal?

                    THE DEFENDANT:  No, Your Honor.  I
understand fully.  Thank you.

                    THE COURT:  And then if you could turn to
paragraph 23, which is entitled "Sex Offender
Registration - Megan's Law/Adam Walsh Act Notice."  I'm
not sure about this provision but did the attorneys both
preserve the right to argue whether there's going to be
a need for this gentleman to register after this
conviction and sentence?  Is that the way I --

                    MR. BELLMORE:  Yes, Your Honor.  The defense
position is going to be that it's not applicable in this
case.

                    THE COURT:  Okay.

                    MR. GREENLEY:  Yes, Your Honor.  We've

1  modified the language in that paragraph from our

2  standard plea so that the parties can argue either way.

3             THE COURT:  Do you understand that, sir?

4             THE DEFENDANT:  (No response.)

5             THE COURT:  Well, let me tell you this way.

6  There's some convictions under federal law that require

7  that the defendant register as a sex offender.  As we

8  sit here today, I'm not sure that this is one of those

9  convictions and the attorneys aren't a hundred percent

10 certain either.  That's why they've kind of left it

11 open.  They've left it open so that both of them can

12 argue whatever position they want to take on this sex

13 offender registration provision.  Ultimately I'll have

14 to decide, after I look at the law and consider their

15 arguments, whether this is the type of conviction that

16 will require you to register as a sex offender.

17             But I honestly don't know as I sit here

18 today whether this conviction falls within this Megan's

19 Law/Adam Walsh Act registration requirement.

20             THE DEFENDANT:  Well, when I looked it over

21 it did not, Your Honor.

22             THE COURT:  Okay.  And I'll give you an

23 opportunity at the time of the sentencing hearing to

24 tell me why you feel that way as well.

25             THE DEFENDANT:  Thank you.  I appreciate

1      that.

2                  THE COURT:  But generally what will happen

3      is that before we have the sentencing hearing both

4      attorneys can submit a Sentencing Memorandum, a legal

5      argument summarizing their position, and before we have

6      the sentencing hearing I'll read those.  I'll go back

7      and look at the law and the cases that they cite and

8      I'll have to determine what I believe is appropriate and

9      what the law requires in the case.  Fair enough?

10                 THE DEFENDANT:  Thank you, Your Honor.  Yes,

11     it is.  Thank you.

12                 THE COURT:  All right.  Then finally if you

13     could take a look at paragraph 6 which is found in the

14     middle of page 2, and paragraph 6 is just a short

15     summary outlining the underlying facts and explaining

16     why you were charged with this crime in Federal Court.

17     As the judge I can't accept a plea of guilty from

18     somebody unless I have information in front of me that

19     explains why they were charged with the crime that they

20     were and what some of the basic underlying facts are.  I

21     can't just come in and accept a plea from somebody that

22     says:  I didn't do anything wrong.  So almost every Plea

23     Agreement signed by a defendant in this country in

24     Federal Court is going to contain a short summary of

25     what occurred that explains why this crime was charged.

1                When you signed the Plea Agreement, you have

2       in essence indicated to me that you've read it, you

3       understand it, you agree with it and you live with it.

4       Is the factual information contained in paragraph 6 of

5       the Plea Agreement true and accurate?

6                THE DEFENDANT:  That is what I was charged

7       with and it is what I signed too, Your Honor, yes.

8                THE COURT:  Is there anything else that

9       either attorney feels that they need to offer into the

10      record as a factual basis for this plea other than

11      paragraph 6?

12               MR. BELLMORE:  No, Your Honor.

13               MR. GREENLEY:  I don't believe so, Your

14      Honor.

15               THE COURT:  All right.  So, Mr. Fly, we've

16      covered that point in the hearing where I'm simply going

17      to ask you how you intend to plead to this charge

18      brought against you in this new document called an

19      Information.  I can -- I can read you the entire charge

20      or I can simply summarize it for you and ask how you

21      plead, whatever you wish me to do.

22               THE DEFENDANT:  Summarize it.

23               THE COURT:  All right.  Do you have any

24      questions before I ask you how you plead to this charge?

25               THE DEFENDANT:  No, Your Honor.

1          THE COURT:  All right.  You've been charged

2    in a document called an Information with a crime that is

3    entitled transportation with intent to engage in

4    criminal sexual activity.  It's a charge that's

5    discussed in paragraph 6 of the Plea Agreement.  As to

6    that charge, Mr. Fly, how do you wish to plead this

7    morning?  Guilty or not guilty?

8          THE DEFENDANT:  Guilty, Your Honor.

9          THE COURT:  The Court accepts your plea of

10   guilty, Mr. Fly.  I find that you are a competent

11   individual who understands what he's been charged with

12   in Federal Court and what the maximum penalties are.  I

13   find that you've entered a knowing and voluntary plea

14   here this morning.  I further find that there are

15   sufficient facts that you have agreed to in paragraph 6

16   of the Plea Agreement that support finding you guilty of

17   this offense.  So in accordance with Rule 11 I accept

18   your plea of guilty.

19          Let me tell you what happens next.  Every

20   time a defendant pleads guilty in Federal Court before

21   the sentencing hearing is conducted we have the United

22   States Probation Office prepare this Presentence

23   Investigation Report.  It's done in every case, felonies

24   and misdemeanors.

25          To do that there will be an officer assigned

1    to prepare that report.  I'm not sure who it is but it

2    will be a federal probation officer probably in Fargo

3    here, possibly in Bismarck, but they will need to visit

4    with you.

5              They need to interview you to gather

6    background biographical information from you.  The

7    report includes information about your family, your

8    education, your work experience.  It includes

9    information about your prior arrests and convictions and

10   it also includes a rather lengthy discussion about the

11   Sentencing Guidelines and how they apply to you and

12   which guidelines apply.  The interview will probably

13   take place in the next two to three weeks, probably be

14   in Fargo here.  It could be face-to-face.  It could be

15   by phone or video conference, but it will be set up

16   through Mr. Bellmore because he has a right to be there

17   when you're interviewed.  If he thinks that something

18   inappropriate's being asked, he has a right to object

19   and put an end to the questioning.  But usually that

20   doesn't happen because these are not police

21   interrogations.  They're just interviews to gather

22   background information.

23              You are married as well?

24              THE DEFENDANT:  Yes, Your Honor.

25              THE COURT:  There's a chance that your wife

 1    will probably be called and interviewed as well.  So if

 2    you talk to her you may want to let her know that

 3    sometime in the next month there might be a federal

 4    probation officer calling her just to confirm some of

 5    the background information.  It's not unusual.  Done in

 6    almost every case.  Spouses, significant others are

 7    contacted.

 8              Then it generally takes a couple of months

 9    to put these reports together.  Some people ask why it

10    takes so long.  Well, I can tell you these officers are

11    busy.  We've got a busy criminal caseload in this state.

12    So it will probably take a couple months.  But as soon

13    as the report is prepared it will be in a rough draft

14    form and it will be sent out to both attorneys and

15    they're given a chance to look it over before it comes

16    to me.  Mr. Bellmore will get you a copy of that report.

17              When it comes to you it's important that you

18    read it quickly and you read it over thoroughly.  We

19    want these reports to be accurate so everybody is given

20    a chance to read it before it's finalized and everybody

21    gets to see it before I do.  So read it over carefully.

22    If you notice any errors in that report it's important

23    that you visit with Mr. Bellmore and he'll check into

24    that for you.  If you have any difficulty reading any of

25    the report, you need to ask for help.  And are you able

1  to read in English well.

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Generally the reports are pretty

4  straightforward but when they start talking about

5  Sentencing Guidelines and things of that sort it's a bit

6  of a foreign language to most people.

7              THE DEFENDANT:  I speak foreign languages.

8              THE COURT:  So don't be shy about asking

9  questions.  Keep in mind there's no such thing as a

10  stupid foolish question.  These are important reports.

11  You need to know what it all means for you.  And if you

12  don't understand any part of it or understand what

13  significance it has, you need to ask for help.

14  Mr. Bellmore has looked at hundreds and hundreds of

15  these and he can answer any question that you might have

16  and if he doesn't know the answer to the question he can

17  do the same thing I do.  Get on the phone with the

18  probation officer that wrote the report or at least he

19  can call the hotline number of the United States

20  Sentencing Commission and ask for an explanation of what

21  it all means.  Then we'll have a sentencing hearing.

22  That hearing is presently scheduled for Friday, April

23  20, 2018 at 1:30 in this courtroom in Fargo.

24              THE DEFENDANT:  Doesn't that exceed the

25  90-day limit, Your Honor?

```
 1              THE COURT:  There's not a strict legal
 2   90-day limit.  That's a goal that's intended to be
 3   reached and if we can get the report out sooner than a
 4   couple of months we'll move the sentencing hearing up.
 5              THE DEFENDANT:  Okay.
 6              THE COURT:  I sometimes hold sentencing
 7   hearings a year after the change of plea hearing has
 8   been conducted.
 9              THE DEFENDANT:  Wow.
10              THE COURT:  But we'll try to do it as
11   quickly as we can.  And if they get the report done in a
12   month and a half, I'll move the hearing up to even
13   sooner than that.  But when they have to write to -- for
14   example, this probation officer will have to write to
15   Arizona to get copies of your criminal records and the
16   judgments of conviction, and sometimes these states
17   don't turn around and respond within a couple of days.
18   Sometimes it's weeks or months before they get the
19   records back.  So that's why the 90 days isn't cast in
20   stone and if we don't have a sentencing hearing within
21   90 days then the whole thing falls apart.  That's not
22   the case.
23              Do you understand?
24              THE DEFENDANT:  Yes, Your Honor.
25              THE COURT:  Okay.  And at the sentencing
```

1    hearing, like I mentioned to you earlier, both attorneys

2    get a chance to speak.  You are given a chance to speak.

3    Both attorneys can submit written materials to me

4    beforehand for my consideration on what guidelines apply

5    and any other legal issues that might surface, including

6    this sex offender registration provision.

7              Both sides can call witnesses.  Both parties

8    can submit all kinds of written materials.  If you want

9    to submit any letters from people that know you well and

10   letters for me to consider, I would encourage you to

11   think about that.  Talk to Mr. Bellmore about that and

12   he can give you some guidance about what judges are

13   interested in hearing from defendants.  All that I ask

14   from you is that if you're going to submit any letters

15   that you get them to your attorney a few weeks before

16   the sentencing hearing so they can get properly filed

17   and they get into my hands.

18             Please don't come to the sentencing hearing

19   with a pack of letters that I get five minutes before

20   the hearing and everybody wants me to read them and

21   consider them when I've got only a fleeting moment to

22   wade through them.  I'll take the time to read the

23   letters but it's not really fair to me and it's not fair

24   to you if I've got to scurry through a bunch of letters

25   quickly.  I generally read letters from defendants and

1   friends and family a couple of times, and I like to read

2   them in the days and weeks before the sentencing hearing

3   rather than the day of so keep that in mind.

4                   THE DEFENDANT:  Yes, Your Honor.

5                   THE COURT:  Do you have any questions?

6                   THE DEFENDANT:  No, Your Honor.

7                   THE COURT:  Anything else that we need to

8   take care of here, gentlemen?

9                   MR. GREENLEY:  Not from the United States,

10  Your Honor.

11                  MR. BELLMORE:  I have nothing further, Your

12  Honor.

13                  THE COURT:  All right.  Thank you then.

14  We'll stand adjourned.

15                  (Adjourned at 8:50 a.m.)

16

17

18

19

20

21

22

23

24

25

1               **CERTIFICATE OF REPORTER**

2           I, Kelly A. Kroke, a duly appointed

3  Registered Professional Reporter;

4            DO HEREBY CERTIFY that I reported in

5  shorthand the foregoing proceedings had and made a

6  record at the time and place indicated.

7            I DO HEREBY FURTHER CERTIFY that the

8  foregoing and attached (32) typewritten pages contain an

9  accurate transcript of my shorthand notes then and there

10  taken.

11           Dated this 26th day of March, 2018.

12

13

14

15

16

17            /s/Kelly A. Kroke
               KELLY A. KROKE - RPR, RMR
18           United States District Court Reporter
              District of North Dakota
19           Eastern Division

20

21

22

23

24

25